Good morning, Your Honors, and may it please the Court. Andrew Talai on behalf of Defendant Appellant Devin Millender. I'd like to reserve three minutes for rebuttal, and I will keep an eye on the clock. So I appreciate the Court's focus order, so unless Your Honors would like to begin elsewhere, I'll start by addressing first the stay, and then second whether California Penal Code 273.5 is a violent felony. So with regard to whether a stay is appropriate, I think obviously this Court has discretion to stay in the case if it wants to. Our primary concern is the risk that the defendant will over-serve his sentence. So I think it's pretty clear from the record that he was first arrested in this case back in April of 2021. So he's been in custody now for 40 months, and if you give jail credit, there might also be good time credit, etc. I think there's a very high risk that he will actually over-serve, assuming Gomez remains law. And also assuming that 273.5 is not a violent felony? Correct, Your Honor. So you have to win on both issues? Yes. I just want to put a button on this point. So in the lower court, Sentencing Council calculated the guidelines without ACCA, without the 2K2.1 enhancement, as 30 to 37 months. So even assuming that he gets the high end or thereabouts, again, he's pretty much already served that much. So if he would really get released, then that's a big problem. But if he wouldn't get released and would be in prison for a long time anyway, because there are three convictions under 273.5 that count for ACCA, then there's no reason to not stay, right? Well, so our position is that 273.5 is not a violent felony, and I will absolutely explain that, Your Honor. Am I missing anything? It all turns on that, right? If you lose that argument, then there's no reason to not stay. Sorry for the double negative. No, I think your logic is correct. Yes, Your Honor. So the other thing I just wanted to mention is that the district court on this date, and the concern about over-serving, is that the district court actually said in this case below that it would have imposed a variance but for the ACCA mandatory minimum, and that's at 1 ER 39. So I'm not going to belabor the point with the other arguments. I would just ask that if the court is inclined to stay, that it not be indefinite. I think I just saw on my phone that the government asked for an extension of time on its PFR in Gomez. I wasn't able to pull it up on my phone, but I think it was for 30 days. So I would just ask that if the government doesn't, maybe something the court could do, is just wait to see if the government does in fact file the PFR, then make its date determination in 30 days. I think that's something that the court could do. But again, I'm not going to... Well, again, this is all going to turn on your next argument, right? So I mean, is it true that the extension of 30 days or 60 days or whatever they might do really isn't going to matter if ACCA is still going to apply? So I'll turn to the second argument, Your Honor. So the first thing I want to just mention is that I would humbly request for a supplemental briefing if the court is going to address this issue. I think my friend on the other side, he sort of put a marker down on Friday evening, and obviously I haven't had a chance to respond to that in writing. I'm prepared to make the argument here. But I think in the interest of fairness and full presentation to the court, it would make sense to have some minimal briefing on the issue. So do you think Gomez has changed your argument? I mean, you had already made an argument about 273.5, so why would it be different now? I think it's the same argument, yeah. And so why do you need more briefing? Well, the government has made new arguments that didn't make it its answering brief. So the first point I want to make on this is waiver. So in its answering brief, the government actually agreed that the California Supreme Court decision, Williams, applies to both 245 and 273.5, meaning that it applies the same mens rea to both offenses. It made that same point in the district court. That's at 2ER-174 and 175, as well as 2ER-245. So I think it's kind of almost a case of affirmative waiver here. But assuming the court does not apply the strict waiver rule to the government, even though we think it should, I think there's plenty of California authority for the proposition that assault and battery have the exact same mens rea in California. So the first— Okay, that may be true as a general matter. So I mean, I do think the briefing here talked a lot about categories as a general matter. But this particular 273.5 is more specific and talks about willfully inflicting corporal injury. And I'm having a lot of trouble understanding how that isn't more than recklessness because it says willfully inflicting corporal injury. Sure, Your Honor. And then also upon the victim. So specifically targeting the victim. So I have a few points on this. I'm not sure if I'm going to get to all of them. But so there are, in fact, California cases that support our argument. So I'm just going to sort of cut to the chase here. But so there's a California appellate decision called Thurston that's at 84 Cal Reporter 2D-24. And there's also a case called Campbell, and that's at 90 Cal Reporter 2D-318. And they both say that for, you know, a California battery offense, you don't have to have any intent. Are they specific to 273.5? Well, so I think they are, but I don't want to misrepresent anything. I also have cases that are specific to 273.5. Well, we have a couple of cases, I think, to look for. I believe Thurston, if I recall correctly, is actually a 273.5 case. And that case says that Justice Indome is applying the Williams definition of the mental state. You don't need to have intent to apply force. You don't need to have knowledge. And for a statute that says willfully inflicts corporal injury? Yes, Your Honor. And the reason for that, I would point Your Honor to, well, first of all, if you look at 273.5, it says willfully, but 245 also has willfully requirement. It's not in the text of the statute, but that's how the courts have interpreted it. And if you look at the jury instructions. Well, willfully doing something, but this is willfully inflicting corporal injury on a victim or on a person. I can't remember the exact word. Yes, it says. That's a lot more specific than the general assault or battery. I'm sure, Your Honor, but it also says, it says willfully inflicts corporal injury resulting in a traumatic condition. And the problem with that under Borden is it's not satisfying the targeting requirement. There's no requirement of the intent to cause the injury. It could just be that you touch the person and they happen to get injured. You have no intent to hurt them. That's enough. Well, but the language is not willfully taking an action that then does the injury. It's willfully inflicts corporal injury. Well, Your Honor, I would point you to a couple of California appellate court decisions that don't interpret the statute that way. The first is a case called Camargo. Actually, I see I'm running into my rebuttal time. So, I will, I will hold for rebuttal. Hopefully, I have a question. Assuming we say 273.5 is a violent felony, can we look at the indictment which lists three separate 273.5 convictions on separate dates? Can we rely on those to affirm the district court? I don't believe so, Your Honor. I think if Your Honor is suggesting that the modified categorical approach applies, I think you could look at it to suss out the elements, but nothing beyond that. So, no actual facts, just elements. Are there three separate 273.5 convictions on separate dates in the indictment? I think there's a... I know the district court can take two of them, but if you look at the indictment, there's a third one there. Yes, there are three. Yes. I thought you were going to argue that a jury would need to find that they happen on different occasions. Is that true? That is my other argument that we didn't have time to get into today. So, do you think we can find ourselves now that the sentence is the same or would it have to be remanded for new sentencing where someone would determine that? Yeah, well, you know, I think under Erlinger that has to happen and I think the government has not proved harmlessness beyond a reasonable doubt. So, I think another option that the court could do is, I mean, we're in a unique position here because the legal framework for both issues has shifted so much since the district court made its decision. And I think, you know, in all fairness, it would kind of make sense to just send it back down to the district court to redo. But doing that before we know if Gomez remains, it would be a waste of time, right? Yeah, I think it makes sense to at least see what happens to Gomez. Again, I don't think if the court is inclined to stay, I don't think it would make sense for it to be an extremely lengthy or indefinite stay, just given the risk of over serving. Hopefully, I can reserve the rest of my time to... All right. Yeah, thank you. Good morning, Your Honors. May it please the court. I would like to pick up with Your Honor's comment about how the briefing addressed the mental state as a general matter. And the reason it did that is because at the time, it didn't matter. The case law was uniform. It was thorough. Post Borden, there were 10 unpublished cases from this circuit reaffirming the pre-Borden decision. And that makes sense because Borden itself said that it was agreeing with this circuit in footnote two. Borden can't have changed the law. I think Gomez was wrong when it said that Borden changed the law. But Borden can't have changed the law because it expressly agreed with this circuit. It certainly can't have done it. I don't think it's... Well, maybe my colleagues disagree, but I don't think re-arguing Gomez is useful, right? We can't do anything about it. We can vote on Bok maybe, but we're not going to decide it here. I agree as to the 245, but as to the 273.5, I think that it doesn't matter because Borden didn't change the law as to 273.5, and Olia Serafina predated Gomez. That was one of the cases I cited in that Friday letter, essentially saying that 273.5 is still a violent felony. And so you can't take Gomez over Olia Serafina since Olia Serafina's... I don't really understand why you ever argued the two are the same, though. It seems like there was very different language in the two, and so the government has walked into this problem in a way that I don't really understand. Because they're general intent crimes. California's terminology is different from federal terminology, and rather than, I suppose, dive into the weeds of how they're different, we cited this court's abundant case law explaining that both were violent felonies. But it doesn't seem like 273.5 is a general intent crime. It's much more specific, isn't it? So when my... I actually... I have a case that has been cited nowhere, sort of like First Amendment Campbell from opposing counsel, People v. Atkins. It's a case that came out about four whether or not it's reckless. And it talks about it as that recklessness can sometimes be general intent and sometimes not. And the notion that general intent encompasses a spectrum. And so California general intent is a little bit weird. I think that's what this court's case law has talked about. California general intent is a little bit weird. But that it can encompass things that are significantly more than recklessness. Frequently are more than recklessness. And this court has said 245... has said 273.5 falls into that category of more than recklessness. And so the reason we briefed it the way we did is because at the time that was the law. I think one of the things that I think might be more... and sorry, aside for Atkins 25... Do you think we need more briefing on this? I would be happy to provide more briefing. I think it's an unusual issue. I don't think it's because I think the 273.5 case law is settled. And I think the 273.5 distinction, the willfully inflict, I think inflict is doing a lot of the same work that against is doing in ACCA. That it requires that it be targeted at a victim. And one of the best comparison points, I think, is the Benuelos-Ion case, which cites People v. Jackson, a California court of appeal case. And it describes 273.5 as a very particular battery that, quote, is not violated unless the corporal injury results from a direct application of the force on the victim by the defendant. I think that's very different from Gomez describes 245 as an act that by its nature will probably and directly result in the application of force. It's cutting out that sort of intermediate link. 273.5... I came in today thinking this had already been briefed, but it seems like both sides are citing cases I've never heard of. Benuelos-Ion was cited in the briefs. So most of these cases were previously cited in the briefs. We just didn't get into the reasons for why they held it, because at the time it didn't matter, is what I would say. Benuelos-Ion was cited in the briefs. So if we agree with you that 273.5 is the criteria for a public felony, what is the remedy then? What are the listening steps? I would ask for the court to simply affirm. I don't think that it needs to be remanded. We went through... Well, the district court did not consider the third 273.5 conviction, I guess possibly because it was the same day as the 245A4 conviction. Benuelos-Right. I suppose so, but... The district court didn't consider it. The PSR didn't have it either, if I recall. I didn't know. And we have a question about whether they happened on different occasions or not. Benuelos-Well, I think it's undisputed between the parties, perhaps. I think that the 245, that the second 273.5 and the 245 were the same incident. They were charged as the same charging instrument. They were pled as the same date, the same victim. I think we have been in a situation where they couldn't have been counted separately, that those were the same thing. The second 273.5... Benuelos-They've been making an Erlanger argument, so I don't understand what point you just made. Benuelos-That the 245 and one of the 273.5s were on the same date, but... Benuelos-But now, if the 245 goes away, we still have to know whether the three 273.5s are all on different dates, and that doesn't speak to that, right? Benuelos-I think it does, because if the 245 was on a different date from the other 273.5s... Benuelos-But wasn't that not determined, because Erlanger hadn't been decided yet? Benuelos-It was determined. It was just determined by the judge, because it wouldn't have been determined. Benuelos-Okay, but so they've been making an argument that that needs to be made by the jury, right? Benuelos-They've been making that argument. As we discussed in the briefing, I think they waived that argument. They specifically argued in their briefing that the Fifth and Sixth Amendment required a jury finding, and yet, nevertheless, they wanted to proceed as it was. So they waived jury trial, accepting that the amendment... Benuelos-But they would like a chance to unwaive because of a new case, and they would like a chance to unwaive because of a new case. I'm not sure why we shouldn't let them. Benuelos-If the court wants to remand and start everything from scratch, the government is happy to do that. We can simply present everything to the jury in the first instance. The government has always been willing to do that. We've been trying to present this case to the fact finder that this court has said we need to present it to. At the time, we were told we had to present it to the judge, so we did. The rule is now that it has to go to a jury, we are happy to present it to a jury. Whoever it needs to be presented to, we are happy to present it to. So what would be the basis for us deciding it now, which is what you started with? Benuelos-Simply a harmless error finding that the 245 and the 273.5 are the same thing, that they have occurred on the same date, and that you can substitute the 273.5 in. If you disagree, it is perfectly... the government is perfectly happy to reprove that to a jury. Let's see. I did want to talk briefly about the concern about overstaying his sentence. He talks about a 36-month guidelines range. The guidelines range would certainly be lower if the ACCA doesn't apply. When I calculated it, I came out to something more in the mid-50s to low-60s. One of the reasons, I think, is that the case law on how you calculate 2K2.1 firearm guidelines has changed since the PSR was first created. That, I think, might have an impact here, but we don't have that. That hasn't really been addressed in any of the briefing. I think his sentence would... it would drop, in all candidness to the court, but it would not drop, I don't think, all the way down to the 36 months. There would still be some time left, just not years. How many months have already been served? About 40, I think 40 and a half, and I think my calculation on the guidelines put it in the low-50s to mid-60s if we were to redo it without ACCA. So the 50s, if there is a non-bond proceeding, it's going to use up that time? It could, but, again, the 273.5s, I don't think, need to be implicated by that. The 273.5s contemplate willful infliction. Infliction necessarily contemplates a target of your action, and when Borden is talking about recklessness not being enough, the reason recklessness is not enough is because recklessness is not directed against somebody, and so Borden is using recklessness one way. California uses recklessness a slightly different way, and I think we need to look at what those two things mean. In Borden, recklessness is it's not targeted at anybody. It's not against them. California, regardless of what recklessness means, willful infliction of a traumatic injury is targeted at a domestic partner, and so regardless of the definition of recklessness, 273.5 is more than that, and that's, I think, when you look at the case law of 273.5, the cases that we cited, Benuelo's Island, the Holder, and Jackson talk about that, so I don't think that you need to, you don't need to wait for the en banc potential in Gomez. I think that you can affirm simply on the 273.5s or send it back saying that 273.5 is still a violent felony and let it be decided by a jury or simply affirm because there's no universe where these were not separate offenses on separate cases. Thank you, your honors. So just on the point about over serving, the guidelines, you know, they may be slightly different than the 30 to 37 month range that was cited below, but again, the district court specifically said it would have imposed a bearing against due to the really strong mitigation here, so that's something to also consider. On the, back to the point I was trying to make before I had to sit down, so I have two examples. One is Camargo, another is Dennis. I don't think I have time to give you the full Westlaw sites, but Dennis is a really good example of why 273.5 is not a violent felony. That's a case where the defendant, he was charged with ripping off the acrylic nail of his former girlfriend. The evidence of trial was equivocal, and it wasn't clear whether he actually ripped it off or he tried to grab her phone and accidentally ripped it off. The California Court of Appeal affirmed the conviction, and it said it doesn't matter what his intent was. He touched her. That was enough. It only requires a volitional act. And that was 273.5, not some other kind of battery. That was 273.5, and it's 2005 Westlaw 1230772. I see I'm out of time, your honors. All right. Let me thank both sides for their arguments in the case of United States v. Roland Harris.
judges: IKUTA, FRIEDLAND, LEE